IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD L. FRANKS,**

    **Plaintiff,**

    v.                                     Civil Action 2:08-CV-806
                                              Magistrate Judge King

**CITY OF COLUMBUS DEPARTMENT
OF PUBLIC SAFETY, DIVISION OF
POLICE,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

With the consent of the parties, *see,* 28 U.S.C. §636(c), this matter is before the Court for consideration of the Defendants' *Motion for Summary Judgment.* Doc. No. 29. For the reasons that follow, the motion is granted.

### I.

Plaintiff, Richard L. Franks ["Plaintiff"], brings this action against the City of Columbus and Columbus police officer Scott Clinger[1] claiming that he was wrongfully arrested on June 2, 2007 at a City of Columbus park. Plaintiff originally filed this action in the Court of Common Pleas for Franklin County, Ohio. The action was removed to this Court on the basis of federal question jurisdiction. 28 U.S.C. §§1331, 1441. Plaintiff asserts a claim for alleged violation of his civil rights pursuant to 42 U.S.C.§1983, as well as state law claims for malicious prosecution,

---

[1]By stipulation of the parties, the Department of Public Safety and the Division of Police have been dismissed from this action. (Doc. No. 9).

unlawful detention / false imprisonment, and abuse of process. The Court has supplemental jurisdiction over the state law claims. 28 U.S.C. §1367.

On June 2, 2007, Defendant Officer Clinger and two other police officers were conducting an undercover operation in Hensel Park, a City of Columbus park located at 3205 South Hamilton Road. *Clinger Affidavit,* ¶14. On deposition, Plaintiff testified that he drove into the park at approximately 9:00 a.m. on June 2, 2007, on his way to work, "to see if any of my friends were there." *Plaintiff's Depo.,* p. 56. According to Plaintiff, the park was empty. Plaintiff began to turn his car around and, as he did so, he "was completely surrounded by three or four [unmarked] cars . . . ." *Id.,* p. 57. Plaintiff claims that he was then taken from his car, handcuffed, and placed in one of the police cars. *Id.* Plaintiff asked why he was being detained and Defendant Clinger told him that he "had been banned from the park." *Id.* at 62. Plaintiff claims that his car was searched and, after approximately one hour, Plaintiff was released and told that he would be charged with criminal trespassing[2] for being in the park. *Id.* The criminal charge was dismissed by the prosecutor on September 4, 2007. *Clinger Affidavit,* ¶16.

Plaintiff had allegedly been banned from City of Columbus parks as a result of an incident that had occurred in 2003. On July 28 of that year, Columbus police were conducting

---

[2]The charge was pursuant to Columbus City Code 2311.21, which states, in part:
(A) No person, without privilege to do so, shall do any of the following:
(1) Knowingly enter or remain on the land or premises of another;
(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard;
(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;
(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either.
(B) It is no defense to a charge under this section that the land or premises involved was owned, controlled, or in custody of a public agency . . . .

an undercover investigation in Berliner Park. *Wolfinbarger Affidavit*, ¶3. The undercover police detectives observed Plaintiff sitting in his car masturbating and his penis exposed. *Id.* Plaintiff was arrested by Detective Ben Wolfinbarger of the Columbus Division of Police Vice Section. *Id.* Plaintiff was charged with public indecency and pled guilty to the offense. *Id.* According to Detective Wolfinbarger, it was his standard practice to "verbally advise any person we arrested for public indecency in a City park to stay out of all City parks." *Id.* ¶4. Wolfinbarger avers that he has no reason to believe that he deviated from the practice with respect to Plaintiff's arrest in 2003. *Id.* On deposition, Plaintiff testified that Detective Wolfinbarger did not issue such a verbal ban. *Plaintiff's Depo.,* p.81. Plaintiff continued to visit City parks after the 2003 incident. However, Plaintiff acknowledges that Defendant Clinger told him on different occasions that he could be arrested for visiting the parks. *Id.,* pp. 81-82; *Clinger Affidavit,* ¶12.

Plaintiff claims, however, that the ban on visiting parks was revoked by Defendant Clinger sometime in late 2006. During one of his visits to a park in the fall of 2006, Plaintiff encountered Defendant Clinger. Defendant Clinger asked Plaintiff what he was doing in the park and advised him that he could be arrested. *Plaintiff's Depo.,* pp. 51-52. As Plaintiff prepared to leave the park, Defendant Clinger allegedly "started laughing and smiling and said, no, you can stay." *Id.,* p. 52. According to Plaintiff, the two then discussed the book Plaintiff was reading. *Id.* Plaintiff continued to visit the parks and, as discussed above, was arrested on one such visit in June 2007.

In the instant action, Plaintiff claims that his arrest in June 2007 violated his constitutional rights. In his complaint, Plaintiff also asserts claims under state law for malicious

3

prosecution, unlawful detention / false imprisonment and abuse of process. Defendants Officer Clinger and the City of Columbus now move for summary judgment on Plaintiff's claims.

## II.

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the

record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III.

### A. Claim under §1983

The Court first considers Plaintiff's claim under 42 U.S.C. §1983. That statute creates a cause of action against any person "who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." The *Complaint* appears to base the constitutional claim upon an alleged denial of equal protection and due process on account of Plaintiff's sexual orientation. *Complaint*, ¶¶24-28. However, and as Defendants point out, Plaintiff does not discuss such claim in opposition to Defendants' motion for summary judgment; rather, plaintiff articulates his claim under §1983 as a deprivation of liberty resulting from an alleged procedural defect in the city's alleged policy of banning individuals from city parks. According to Plaintiff, the City's "written policy and its unwritten quasi-policy, as defined by Sgt. Stanley Latta . . . combined to cause Plaintiff to be the subject of an unlawful arrest . . . ." *Memorandum contra*, p.10, Doc. No. 34. Plaintiff further

5

argues that "the flaw in the municipal policies . . . permitted, or at least contributed to, the arresting officer's actions." (*Id.* at 15). Defendants urge the Court to disregard this articulation of Plaintiff's claim because it was not clearly presented in the *Complaint*[3].

In the Court's view, the *Complaint* does not clearly articulate the claim articulated by Plaintiff in his memorandum *contra* the motion for summary judgment. Although the *Complaint* states that the Defendants acted under color of state law or policy in depriving him of his constitutional rights, this language appears to relate only to the state actor element of a §1983 claim. Accordingly, the Court will consider whether the "course of the proceedings" in this case provided Defendants sufficient notice of the nature of Plaintiff's claim to consider it at this stage of the action. *See Cummings v. City of Akron*, 418 F.3d 676, 681 (6th Cir. 2005).

In *Cummings,* the plaintiff's complaint contained a single federal claim under §1983 alleging a deprivation of constitutional rights by the defendant police officers' acts of "seizing, beating, restraining and/or committing the actions hereinbefore described [in his complaint] . . . ." 418 F.3d at 681. The district court found that plaintiff's later articulated claim for unlawful warrantless entry into his residence was not properly considered because there was no mention of that claim in the complaint. On appeal, the United States Court of Appeals for the Sixth Circuit considered whether the course of the proceedings nevertheless provided Defendants notice of the claim. The Court found that the Defendants had sufficient notice because the claim was expressly considered during the discovery process. The Court also pointed out that the

---

[3]Plaintiff argues that the claim was clearly presented at ¶24 of the Complaint, which states:
At all times pertinent to the events related to the [June 2007 arrest], defendants acted under color of law, statute, ordinance, custom, usage or policy, and hence, plaintiff's detention, arrest and prosecution were accomplished by state action.
*Complaint*, ¶24, Doc. No. 3.

claim had been fully briefed in the Defendants' summary judgment motion. *Id.*

In *Harris v. Bornhorst,* 513 F.3d 503 (6th Cir. 2008), the Court of Appeals considered whether the Plaintiff in that case could pursue a claim for alleged violation of the *Brady* doctrine[4] when Plaintiff failed to specifically identify such a claim in the complaint. The district court had held that the claim had not been clearly articulated and had therefore been forfeited. The Sixth Circuit disagreed, finding that the claim was contemplated by the allegation in the complaint that the Defendants "engaged in a pattern of activity and course of conduct that was intended to manufacture [Plaintiff's] conviction" in violation of Plaintiff's constitutional rights. 513 F.3d at 517. Furthermore, the prosecutor's testimony on deposition made clear that the parties had contemplated a *Brady* claim. Thus, the Court of Appeals concluded that the district court erred in dismissing the claim.

In this case, the Court concludes that Plaintiff's claim under section 1983 as presently articulated is not supported by the course of the proceedings. Although Sergeant Latta testified about the city's "quasi policy" as to "public indecency type of offenders in city owned parks . . . ." *Deposition of Sgt. Stanley Latta,* p.20, it does not appear that Plaintiff intends to challenge this policy. In fact, Plaintiff acknowledges that, had he received written notice of the ban on visiting public parks, the action would probably never have been filed. Doc. No. 34, p.14. Rather, Plaintiff bases his theory of liability on a policy of deliberate indifference regarding enforcement of the ban on visiting parks. This theory of liability is simply not encompassed in the allegations contained in the *Complaint*. The Court further finds, after reviewing the documentary evidence of record, that this theory is not supported by the course of proceedings in

---

[4]*Brady v. Maryland*, 373 U.S. 83 (1963), provides for disclosure to a criminal defendant of exculpatory evidence in the government's possession.

this action. Consequently, the Court agrees with Defendants that the constitutional claim currently articulated by Plaintiff is not properly before the Court.

Alternatively, even assuming that this claim is properly presented and preserved by the course of the proceedings in this case, the Court nevertheless concludes that Plaintiff has failed to present evidence in support of such a claim sufficient to overcome the motion for summary judgment. In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978), the United States Supreme Court held that liability against a municipality attaches when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury . . . ." The municipal policy must be the "moving force" behind the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). A municipality cannot be held liable on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

In order to establish liability, Plaintiff must first identify a "policy" or "custom" that caused the alleged injury. An official policy "often refers to formal rules or understandings - often but not always committed to writing - that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480-81(1986).

As stated above, Plaintiff does not challenge any policy of banning individuals from city parks; rather, Plaintiff argues that flawed enforcement of the policy forms the basis for liability in this action. In other words, Plaintiff appears to claim that the alleged issuance of a ban,[5]

---

[5]As stated above, Plaintiff contends that Officer Wolfinbarger did not issue a verbal order banning Plaintiff from visiting parks after his June 2007 arrest. Plaintiff acknowledges, however, that Defendant Officer Clinger told Plaintiff on several occasions that he had been banned from visiting parks as a result of the July 2003 incident. In the Court's view, whether Officer Wolfinbarger issued the ban or not is not material to the resolution of Plaintiff's

8

followed by the alleged verbal revocation of the ban by Defendant Clinger, creates confusion and amounts to a flaw in the enforcement of the policy. According to Plaintiff, the alleged events leading up to his arrest amount to a policy of deliberate indifference on the part of the City. Doc. No.34, p.15.

While the existence of a policy can be established by repeated "deliberate indifference" to a frequently recurring circumstance, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), the evidence presented by plaintiff falls short of such a showing. Mere negligence will not suffice to meet the deliberate indifference standard, which requires proof that a government or official disregarded a known or obvious consequence of official action or inaction. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407 (1997). The Plaintiff must show that the municipality was aware of, and acquiesced in, a pattern of unconstitutional actions of its employees. *Id.* Plaintiff points to no evidence of any pattern of persistent illegal activity in this case. For this reason, even if the Court were to conclude that the current articulation of Plaintiff's claim under §1983 had been properly pleaded and preserved, the Defendants would be entitled to summary judgment on that claim.

## B. State Law Claims

Plaintiff alleges that the events surrounding the June 2007 arrest amount to malicious prosecution, unlawful detention / false imprisonment and abuse of process. In light of the Court's disposition of the federal claim in this case, the Court declines to exercise supplemental

---

constitutional claim.

jurisdiction over the state law claims. 28 U.S.C. sec. 1367(c)(3)[6].

## IV.

In light of the foregoing, the Defendants' *Motion for Summary Judgment,* Doc. No.29, is **GRANTED**. The Clerk shall enter judgment in favor of Defendants on the Plaintiff's federal claim and remand the action to state court for consideration of Plaintiff's state law claims.

**IT IS SO ORDERED.**

**February 26, 2010**   *s/Norah McCann King*
**DATE**                **NORAH McCANN KING**
                        **UNITED STATES MAGISTRATE JUDGE**

---

[6] 28 U.S.C. sec. 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ."